340 P.2d 1111

Rulon J. ANDERSON and Leona Anderson, his wife, Plaintiffs-Appellants,

v.

Clifford CUMMINGS and Nancy Cummings, his wife, Defendants-Respondents.

No. 8748.

Supreme Court of Idaho.

June 25, 1959.

A. A. Merrill, Idaho Falls, for appellants.

Holden, Holden & Kidwell, Idaho Falls, for respondents.

SMITH, Justice.

During April, 1957, appellants (plaintiffs) brought an action in the district court of Butte County seeking an adjudication of their right to the use of certain waters for irrigation purposes, and to compel removal of a dam obstructing the flow of the waters allegedly constructed by respondents (defendants) during the spring of 1957. This case resulted in a decree, entered April 11, 1958, favorable to appellants, the relevant portions thereof reading as follows:

'It is ordered, adjudged and decreed, that the plaintiffs, Rulon Anderson and Leona Anderson, were at all times since March 1, 1939, and now are the owners and entitled to the possession and use of approximately 50 miners inches of water, the major part of which arises, springs up and seeps into a certain ravine, which ravine heads in the northwest quarter of Section 6, Township 3 North, Range 27, E.B.M., Butte County, Idaho, owned by Frank Goodman and the balance of said water springs up and seeps into said ravine in the extreme southeast corner of defendants' [Clifford Cummings and Nancy Cummings, his wife] premises described as the northeast quarter of section 1, township 3 north, range 26, E.B.M., Butte County, Idaho. That said water has run into and upon plaintiffs' premises for over 20 years, and has been used by them and their predecessors in interest, and put to a beneficial use for the purpose of irrigation, by the sub-method; the plaintiffs' land [is] described as the southeast

quarter of section 1, township 3 north, range 26, E.B.M., Butte County, Idaho."

The decree quieted in plaintiffs the title to the use of the referred to 50 miners inches of water, against the claims of all persons, including defendants, save only defendants' right to water their domestic animals from said stream; and provided that should defendants in the future desire to utilize to a beneficial use the seepage and waste water from their own lands referred to in the decree, that they may apply to the court by appropriate proceedings for such purpose. The decree then recites:

"* * * that the defendants are required to remove said dam within 15 days from date hereof and restore the said channel and/or water course to its former state and to the position it was in prior to the defendants having constructed said dam and prior to the commencement of this action and upon their failure to so do, the plaintiffs may remove said dam and restore said ravine or channel to its natural state and have judgment against the defendants for the reasonable cost thereof, * *.

"* * * that title to said 50 miners inches of water is quieted in the plaintiffs, except as herein above provided * * *."

The dam referred to in this decree is herein sometimes referred to as the lower dam.

July 23, 1958, appellants moved the court for an order amending the aforesaid decree to provide that two other small dams, sometimes herein referred to as the upper dams, referred to by plaintiffs in the motion as "constructed prior to and after plaintiff filed suit," be removed. This was upon the theory that when respondents removed the lower dam, referred to in the decree, the water belonging to appellants, and decreed to them, could not flow to appellants' premises because of the two small upper dams, and that appellants had been unable at the time of the trial to determine that the upper dams would retard or block the flow of appellants' decreed water, after removal of the lower dam. The trial court, after a hearing, denied the motion.

Appellants then filed the instant action alleging the prior action and entry therein of findings of fact and conclusions of law, followed by the decree quieting title in appellants to the use for irrigation purposes of the 50 miners inches of water, subject to respondents' limited use as provided in the decree. Appellants further allege that during the late spring of 1957 respondents constructed the three dams in such a manner that, at the time of the former suit, appellants were not aware that the flow of their decreed water would be stopped by the two upper dams because they were covered with water at the time of the trial, and that appellants did not become cogni-

**331**

zant thereof until after the lower dam, referred to in the decree, had been removed.

Appellants, in their complaint, also refer to the portion of the decree in the prior suit, hereinbefore set out, particularly that portion requiring respondents to restore said channel or water course to its natural state. Appellants allege in effect that respondents refused so to restore the channel or to allow appellants to restore it; and prayed that respondents be required to do so.

Appellants pleaded a second cause of action which they have abandoned.

Respondents generally demurred to the complaint; also moved to dismiss it on the ground that on its face it showed that the issue sought to be presented thereby is res judicata. The trial court, upon a hearing, granted the motion to dismiss, followed by a judgment dismissing the complaint. Appellants appealed from the judgment.

Appellants' assignments raise the single question whether the court erred in dismissing the action.

Respondents, in support of the theory of res judicata, argue that in the former action the trial judge considered matters presented relating to the two upper dams and whether they interfered with the flow of water in the channel or water course; they direct attention to the memorandum decision in the prior action wherein the trial judge referred to the two small dams situate above the point where "the present dam is located". The crux of the court's memorandum decision is to the following effect, as recited by the trial judge:

"* * * defendants [respondents] desire the water flowing from and through their land for the beneficial use of watering their livestock. Apparently they are unable to capture the water to further irrigate their land. However, *they* [respondents] had such use of the water before and *have gained no additional use by damming the stream.* * * * It is difficult to see where they [respondents] are creating a new beneficial use by such damming, and instead seem to be depriving the plaintiffs [appellants] from such water as may be available to the plaintiffs of the water arising on the land of Goodman. This would seem to be a large share of the water available." (Emphasis supplied.)

The decree which the trial court then entered in addition to quieting title in appellants to the 50 miners inches of the water flowing in the channel or water course subject to respondents' limited use thereof, then decrees, in further safeguard of appellants' decreed right to the beneficial use of said water, that respondents restore the channel or water course to its former state.

Moreover, the findings upon which the decree, quieting appellants' title to the right to the beneficial use of the 50 miners inches of water, is grounded on a finding of the court that:

"* * * for more than 20 years prior to the commencement of this action plaintiffs have appropriated said 50 miners inches of water, and the whole thereof, and have used the same each year and put the same to beneficial use by sub-irrigating approximately 50 acres of their farm land located in the Southeast Quarter of section one, township three, north, range 26, E.B.M., Butte County, Idaho, and that during all of said time the defendants, their predecessors in interest or any other person or persons have ever [never] attempted to use said water for any purpose whatsoever except defendants' livestock have drunk from said stream."

It is only in default cases where no answer is filed, that the narrow construction attains which respondents seek to impress in former action, viz., that the relief granted the plaintiff cannot exceed that demanded in his complaint. While such is statutory rule of I.C. § 10–704, we find therein the further rule applicable in the former case, where the issues were made up by the pleadings and the case proceeded to finality by entry of the decree,—"* *

but in any other case the court may grant him [plaintiff] any relief consistent with the case made by the complaint embraced within the issue." In Anderson v. Whipple, 71 Idaho 112, 122, 227 P.2d 351, 357, this Court, after referring to the answer filed, which removed the case from the category of a default matter, stated:

"We adhere to the rule that 'Equity having obtained jurisdiction of subject matter of a dispute, will retain it for the settlement of all controversy between the parties with respect thereto.' Fogelstrom v. Murphy, 70 Idaho 488, 222 P.2d 1080, 1083, and cases there cited. It is also the rule in this state (except in default cases) that the court will grant all proper relief ·consistent with the case made and embraced within the issues, whether the particular relief be prayed for or not. [Citations.]"

See also Cobb v. Cobb, 71 Idaho 388, 233 P.2d 423.

Under the law of this state the distinctions between actions at law and suits in equity, and the forms of such actions and suits, are prohibited to the end that there shall be but one form of action for the enforcement or protection of private rights or the redress of private wrongs, which shall be denominated a civil action. Idaho Const. art. 5, § 1; I.C. § 5–101. The rule is stated in Paulsen v.

Krumsick, 68 Idaho 341, 346, 195 P.2d 363, 366:

> "Under our code, the technicalities of pleadings have been dispensed with and plaintiff need only state his cause of action in ordinary and concise language, * * * and plaintiff can be sent out of court only when upon his facts he is entitled to no relief either at law or in equity."

See also Stone v. Bradshaw, 64 Idaho 152, 128 P.2d 844; Cooper v. Wesco Builders, 73 Idaho 383, 253 P.2d 226.

■■ The character of a pleading is to be determined from the nature and substance of the facts therein alleged. Universal C.I.T. Credit Corporation v. Whitworth, 77 Idaho 528, 296 P.2d 712. " * * * for the purpose of determining the effect of a pleading, its allegations must be liberally construed with a view to substantial justice between the parties, and to that end the pleadings should be so construed as to allege all facts that can be implied from fair and reasonable intendment from facts expressly stated." Paulsen v. Krumsick, supra.

Tested by these rules, the complaint in the instant case in effect alleges respondents' interference with appellants' prior decreed right to the beneficial use of 50 miners inches of water; and because the flow of the water is interfered with or intercepted, appellants seek equitable relief in the nature of mandamus to compel respondents to remove the existing obstructions in and upon their land, which allegedly stop or seriously interfere with the flow of appellants' decreed water, subject to the limitations set forth in the decree. Appellants seek only the right to have the channel or water course restored to its former or other state so as to allow the uninterrupted flow to their premises of their decreed water. It is thus clear that the principal and only question involved is appellants' right to the beneficial use of the 50 miners inches of water, title to which the trial court, by its decree, quieted in their favor, against the claims of respondents subject to their limited use recited in the decree.

■ Clearly, from the record, the trial court in the prior suit assumed equitable jurisdiction of the entire subject matter in order to, and it did, adjudicate the matter of the then existing impediments to the flow of appellants' decreed water, including not only the lower dam, but also the small upper dams and, as indicated by the expression of the trial judge after referring to the three dams, that respondents "have gained no additional use [of the water] by damming the stream. * * * and instead seem to be depriving the plaintiffs from such water." It was necessary that the trial court recognize and assume jurisiction of the entire subject matter in order to adjudicate the question whether appellants

were entitled to the decree, which it awarded in their favor, quieting the title in them to the use of the 50 miners inches of irrigation waters, subject only to the limitations set out in the decree.

The complaint in the instant case sets out that prior decree which respondents do not dispute; and appellants allege facts showing interference or stoppage of the flow of their decreed water to their premises from causes existing in and upon respondents' lands which respondents refuse to remedy or allow appellants to remedy; and appellants pray for mandatory relief compelling respondents to respect said decree.

Appellants' decreed water right constitutes real property; such right is appurtenant to appellants' lands to which the water represented thereby has been beneficially applied. Idaho Const. art. 15, § 4; I.C. §§ 42–101 and 55–101; Follett v. Taylor Brothers, 77 Idaho 416, 294 P.2d 1088.

The judgment is reversed with instructions to the trial court to issue an alternative writ of mandate directed to respondents either to restore the channel or water way to its natural state so as to permit the flow to appellants' premises of their 50 miners inches of decreed waters, or by return, to show cause why they should not be required so to do, the trial court to proceed accordingly.

Costs to appellants.

TAYLOR, KNUDSON and McQUADE, JJ., and MARTIN, D. J., concur.

PORTER, C. J., not participating.